THOMPSON, J.
 

 The defendant was tried and convicted of the offense of setting at liberty without authority a prisoner in the custody of the sheriff serving a sentence for transporting intoxicating liquor for beverage purposes.
 

 From a sentence of not less than ónfe year nor more than 18 months in the penitentiary-the defendant appeals.
 

 The record presents 16 bills of exception predicated on alleged errors committed .by the presiding judge on the trial of the case.
 

 Bill No. 1.
 

 Bob Baggett, a deputy sheriff, was on the stand, as a witness for the state, and was asked: ■
 

 “How did it come about that he (Stanley) started to work? A. He came out with the other prisoners when he went to open the jail, and I told him that I did not intend to carry him out. I told him that I didn’t know that I was ready for him, and he asked me if he could go and work and get rid of his fine, and I took him out.”
 

 Whereupon counsel for defendant objected to the conversation, and to what Baggett had told Stanley.
 

 It appears that Stanley was the prisoner set at liberty by the defendant, and the purpose of 'the testimony was to prove that the prisoner voluntarily consented to work out his fine on the public roads under a-resolution of the police jury passed pursuant to and in accordance with Act 121 of 1888. The bill does not inform us of any particular objection the defendant urged against the testimony, and we must assume that the trial judge considered the evidence relevant. He so held, and we have no reason to say that he erred in so ruling.
 

 Bill No. 2.
 

 The state witness Baggett was asked:
 

 “Will you relate to the jury just the conditions under which he (defendant) escaped?”
 

 To which question counsel for defendant objected, for the reason that the witness had testified that he was a deputy sheriff, and the bill of indictment.set out that the prisoner was liberated from the custody of the sheriff, and to permit testimony going to show that the released prisoner was in the custody of the deputy “would be an enlargement of the pleadings.”
 

 The objection was without merit. A .prisoner in the legal custody' of a deputy sheriff is, for all intents and purposes, in the custody of the sheriff.
 

 
 *825
 
 Bill No. 3.
 

 The witness Baggett was asked:
 

 “Were you standing with them ? A. I was on the ear with them. Rice drove by about as fast as a man could walk and looked up, and then again in about five minutes he drove by again, and then Stanley asked me if he might speak to him” (Rice).
 

 To which counsel objected as being hearsay.
 

 The witness was relating facts as to what happened at the exact time of the prisoner’s escape, and the movements of Rice the defendant, and what Stanley said to the deputy were so closely connected with the escape of Stanley as to form a part of the res gestse.
 

 Bill No. 4.
 

 Baggett was asked:
 

 “When you hollowed [halloed], did you hollow [hallo] loud enough for them to hear?”
 

 To which the witness answered, “I think so.” The ■ objection was to the witness stating what he thought. The testimony taken in connection with this bill shows that Baggett shot four times at the car as it moved away with Rice and Stanley, but the shots failed to halt the ear.
 

 It was while the car was yet in sight that the deputy sheriff gave the command to stop. Whether the escaping prisoner heard the deputy is not shown. It was permissible for the deputy to state how loud he halloed and to give his opinion as to whether the parties were sufficiently near to hear him.
 

 Bill No. 5.
 

 Another .question asked Baggett, “Didn’t he [Rice] drive along the road there?” which was objected to as irrelevant and leading.
 

 It is shown that the witness was being examined as to the precise location of the public road with reference to a car of gravel which was being unloaded, and the trial judge says that the situation had not been made • clear, and that the testimony sought was necessary to a proper understanding of the scene, and that the testimony was a part of the res gestse. We approve the ruling.
 

 The question was leading, but the answer elicited was not of such vital significance as to prejudice the rights of the accused.
 

 Bill No. 6.
 

 On cross-examination counsel for defendant asked Baggett if he got any salary as deputy .sheriff; it having been shown that Baggett was drawing a salary from the parish as superintendent of the road work. On •objection of the state the testimony was ruled out. It was shown that Baggett was a deputy sheriff, duly appointed and sworn, and had charge, as such, of the prisoners at work on the public roads. It was immaterial by whom his salary was paid. If he was paid no salary at all and volunteered his services, that fact would not have affected his custody of and authority over the prisoners lawfully under his control.
 

 Bill No. 7.
 

 This bill is equally without merit. A witness McBatter was asked to refer to a book and state whether or not there was a resolution providing for working prisoners on the highway and otherwise of placing prisoners to work under a deputy sheriff. ' The objection that the resolution was the best evidence was disposed of by the production and offering of the resolution itself. ■
 

 Bill No. 8.
 

 This bill was disposed of ,by the statement of the judge to the effect that the objection to the reading of the resolution by the witness was sustained by the court and the resolution itself was regularly offered in evidence.
 

 Bill No. 9.
 

 This bill presents several questions propounded by the defendant to the witness
 
 *827
 
 McFatter for the purpose of showing that the deputy sheriff who had charge of the prisoner while working on the' public roads was in fact under employment of the police jury, and had not been paid any salary as a deputy sheriff. The testimony was clearly inadmissible. It was no concern of the defendant as to the source from which the deputy sheriff received his salary. The question of salary did not affect the authority of the deputy over the prisoner.
 

 It was sufficient that the deputy.represented the sheriff and that the prisoner was lawfully in his custody when liberated and afforded the means of escape from the officer by the act of the defendant.
 

 Bill No. 10.
 

 A witness, John Foster, was asked what official position he held in the parish of Beauregard, which was objected to by the defendant, for the reason that the commission and oath of office was the best evidence of the witness’ official character.
 

 The witness was a constable and was the person who arrested the defendant. The evidence was simply intended to identify the witness as the officer who made the arrest and was clearly admissible.
 

 The constable’s right to act as such officer was not an issue; it was a collateral matter and was not open to attack by the defendant. We see no reason why the witness should not be permitted to state as a fact what official position he held without furnishing the written evidence of his right to exercise the duties of his office.
 

 Bill No. 11.
 

 The witness Foster was asked by the state to relate the condition and circumstances under which he made the arrest of defendant, and proceeded to state that he received a phone call from the sheriff’s' office asking him to look out, when counsel for defendant objected to the testimony as hearsay.
 

 The judge in his per curiam says that this bill is incorrect; that the court sustained the objection, and instructed the witness to relate occurrences, and not conversations; and that the witness went no further with the phone call.
 

 Another question to the witness Foster was: “Will you relate to the jury the condition under which his arrest was made?” The witness proceeded to state that oh the afternoon of March 5th he had a x>hone call from the sheriff’s office asking him to look out, when the objection of hearsay was interposed. The court sustained the objection and instructed the witness to «elate occurrences, and not conversations, and the witness went no further with his statement of the phone call.
 

 The ruling satisfied and ended the defendant’s complaint on the score of hearsay.
 

 Bill No. 12.
 

 The sheriff, being a witness, was asked by the state if the prisoner Stanley was taken away from his official deputy, to which the defendant objected, for the reason that it would enlarge the pleading. The question was not answered, for the reason that the sheriff , could not state what oe curred during bis absence from the scene. This left' defendant without cause for complaint.
 

 On cross-examination, the sheriff was asked who paid the salary of the deputy, Baggett, to which the state objected as being irrelevant and immaterial, and the objection was sustained.
 

 The ruling was not improxxer as we have held in considering exception No. 9.
 

 Bill No. 13.
 

 Deputy Sheriff Grill was asked if defendant had made any statement to him, which was objected to until it was shown that any state
 
 *829
 
 ment made by tbe defendant was free and voluntary.
 

 The judge in his per curiam .states that the testimony of Gill, as well as that of the witness Baggett, clearly showed that the confession was not only free and voluntary, but given with the utmost cheerfulness.
 

 Bill No. 14.
 

 After the witnesses Bob Baggett, M. Gill, and Matt Gill, who were deputies of the sheriff, had testified as to certain statements or confessions made by the defendant, the defendant moved the court to strike out of the record and have the jury disregard the testimony of the three witnesses, for the reason that the said witnesses had violated the rules of the court when placed under sequestration by talking to each other in the presence of the district attorney.
 

 The district attorney states that the witnesses did not talk to each other in his presence; that he asked one of the witnesses several questions within the hearing of another witness; that all of the witnesses were sequestered in one small room; and that it would have been difficult to prevent one person from hearing another in the room.
 

 The judge says that it is apparently true that the assistant district attorney consulted with a witness within the hearing of another witness, but this was a mere oversight and in his opinion had no effect on the testimony of either witness. The witnesses were honorable and intelligent men and had no interest in the ease except to tell the truth.
 

 The district attorney undoubtedly had the legal right to consult his witnesses and to ask them questions concerning facts within their knowledge, and, while the better course would have been to take the witness so interrogated out of the hearing of the other witnesses who were under the rule, still the act of the district attorney in this instance under the circumstances did not prejudice the legal rights of the defendant and furnished no sufficient reason for instructing the jury to disregard the testimony of such witnesses as may have heard the inquiry conducted by the prosecuting officer.
 

 Bill No. 15.
 

 The district attorney, in his closing' argument, stated to the jury that the defendant came over here from Texas, violating the prohibition law, and had released a prisoner from ’ custody, to which remarks the defendant objected, for the reason they were outside of the record.
 

 The judge states that the comment was not outside the record; that the record of the charge and conviction of the prisoner for violating the prohibition law was in evidence. The judge was right in refusing to instruct the jury to disregard the remarks made by the district attorney. The argument was not improper.
 

 Bill No. 16.
 

 The judge, in his charge to the jury, stated:
 

 “If a man would go to a place where a man was working, in an automobile or other appliance, and permit him or invite him to enter it, and he does, and he drives away swiftly, he is guilty of setting at liberty.”
 

 The defendant objected to this charge as being a comment upon the evidence.
 

 The judge states that the charge was one of several hypothetical illustrations of the meaning of the statutory expression “set at liberty.”
 

 We are not advised by the record as to the applicability of the charge to the particular facts which connected the accused with liberating the prisoner, and cannot say that the charge as given trenched on the facts in evidence. We must therefore accept the statement of the trial judge to the effect that the statement was by way of illustration, and not a comment on the evidence.
 

 
 *831
 
 The rule as laid down in Marr’s Crim. Jurisprudence (2d Ed.) 1046, is:
 

 “That the judge may assume in his charge a hypothetical state of facts, and say to the’ jury that, if such facts are proved, accused is guilty of the crime charged.”
 

 “It is not to comment on the facts for the charge to contain an illustration of a general abstract proposition which embraces self-evident truths.” Marr’s Crim. Juris. (2d Ed.) 1647,
 

 Finding no reversible error in any of the rulings of the court complained of, the conviction and sentence of the accused are affirmed.